**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| **In Re: Rare Breed Triggers Patent Litigation** | **4:26-md-03176-ALM**<br>**MDL 3176** |
| ABC IP, LLC, and RARE BREED TRIGGERS, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>80MILLS LLC, d/b/a TACTICAL TITAN SUPPLY, and PEARSON GARDNER,<br><br>Defendants. | Civil Action No. 4:26-cv-00380-ALM |
| ABC IP, LLC, and RARE BREED TRIGGERS, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>HANES TACTICAL, LLC, and DAMION TERRELL BENNETT,<br><br>Defendants. | Civil Action No. 4:26-cv-00369-ALM |
| ABC IP, LLC, and RARE BREED TRIGGERS, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>DNT LLC, d/b/a DEEZ NUTZ TACTICAL, and ZACH MORROW,<br>Defendants. | Civil Action No. 4:26-cv-00377-ALM |

ii

| | |
|---|---|
| ABC IP, LLC, and RARE BREED TRIGGERS, INC., <br><br> Plaintiffs, <br><br> v. <br><br> HARRISON GUNWORKS LLC, and TYLER HARRISON, <br><br> Defendants. | Civil Action No. 4:26-cv-00379-ALM |
| ABC IP, LLC, and RARE BREED TRIGGERS, INC., <br><br> Plaintiffs, <br><br> v. <br><br> STEVEN THANH NGUYEN, d/b/a POLYMER PEW, <br><br> Defendant. | Civil Action No. 4:26-cv-00425-ALM |
| ABC IP, LLC, and RARE BREED TRIGGERS, INC., <br><br> Plaintiffs, <br><br> v. <br><br> Z3 PRODUCTIONS, LLC, d/b/a Z3PRO, <br><br> Defendant. | Civil Action No. 4:26-cv-00367-ALM |

**PLAINTIFFS' OPPOSITION TO CERTAIN DEFENDANTS' MOTION FOR SCHEDULING ORDER**

iii

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ........................................................................................................... 1

II.     FACTUAL BACKGROUND........................................................................................ 2

      A.      Rare Breed Created the Market, Fought for Years to Sell Its Products, and
           Emerged Under a DOJ Settlement That Requires It to Enforce Its Patents............ 2

      B.      This MDL and the Consolidated Preliminary-Injunction Motion ......................... 4

      C.      The Parties' Coordination and the Moving Defendants' June 2 Conference ......... 5

III.    ARGUMENT.................................................................................................................. 6

      A.      The Court's Docket-Management Authority and the Patent Rules Support
           Deciding the P.I. Motion Promptly, Not Pausing It............................................... 6

      B.      Defendants Show No Good Cause for Suspending Their Response Deadline,
           Which Is the Practical Effect of Their Motion....................................................... 7

           1.      The Size of the Consolidated P.I. Motion Does Not Support the Moving
                 Defendants' Requested Relief...................................................................... 8

           2.      The Pleading Status of the Recently Issued Patents Is No Basis to Suspend
                 the Deadlines............................................................................................... 9

           3.      Moving Defendants' Suggestion That Preliminary-Injunction Proceedings
                 Be Broken Into Defendant-Specific Briefing Runs Counter to the MDL's
                 Purpose...................................................................................................... 10

      C.      The Moving Defendants Effectively Request an Open-Ended Stay That Would
           Prolong Plaintiffs' Ongoing, Irreparable Harm .................................................... 10

IV.    CONCLUSION............................................................................................................. 12

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ABC IP, LLC, et al., v. 80Mills LLC, et al.*,
 No. 4:26-cv-00380, Dkt. No. 51 (E.D. Tex. June 9, 2026)..........................................................1

*ABC IP, LLC, et al., v. 80Mills LLC, et al.*,
 No. 4:26-cv-00380-ALM, Dkt. No. 51 (E.D. Tex. June 9, 2026) .................................. *passim*

*ABC IP, LLC, et al., v. Hanes Tactical LLC, et al.*,
 No. 26-cv-00369, Dkt. No. 52 (E.D. Tex. June 9, 2026)..........................................................1

*ABC IP, LLC, et al., v. Harrison Gunworks LLC, et al.*,
 No. 26-cv-00379, Dkt. No. 45 (E.D. Tex. June 9, 2026)..........................................................1

*ABC IP, LLC, et al., v. Nguyen*,
 No. 26-cv-00425, Dkt. No. 38 (E.D. Tex. June 9, 2026)..........................................................1

*ABC IP, LLC, et al., v. Z3 Prods, LLC*,
 No. 26-cv-00367, Dkt. No. 56 (E.D. Tex. June 9, 2026)..........................................................1

*ABC IP, LLC v. Hawkphin Sales, LLC*,
 No. 4:26-cv-00015, D.I. 26 (S.D. Iowa June 3, 2026)..............................................................9

*ABC IP, LLC v. Hush Distribution, LLC*,
 No. 2:26-cv-00054, D.I. 18 (E.D. Tex. June 1, 2026) ..............................................................9

*Cargill v. Garland*,
 602 U.S. 406 (2024).................................................................................................................3

*Douglas Dynamics, LLC v. Buyers Prods. Co.*,
 717 F.3d 1336 (Fed. Cir. 2013)..............................................................................................11

*Natera, Inc. v. NeoGenomics Lab'ys, Inc.*,
 106 F.4th 1369 (Fed. Cir. 2024) ..............................................................................................7

*Rare Breed Triggers, Inc., et al. v. AS Designs, LLC, et al.*,
 No. 4:26-cv-00370, Dkt. No. 28 (E.D. Tex. Apr. 27, 2026)....................................................11

*Rare Breed Triggers, Inc., et al., v. DNT LLC, et al.*,
 No. 26-cv-00377, Dkt. No. 53 (E.D. Tex. June 9, 2026)..........................................................1

*In re: Rare Breed Triggers Pat. Litig.*,
 MDL No. 3176, Dkt. No. 44 (J.P.M.L. Apr. 2, 2026) ...........................................................10

*In re Rare Breed Triggers Pat. Litig.*,
No. 4:26-md-03176-ALM, D.I. 7-02 (E.D. Tex. May 29, 2026) ..........................................3, 4

*In re Rare Breed Triggers Pat. Litig.*,
No. 4:26-md-03176-ALM, Dkt. No. 7 (E.D. Tex. May 29, 2026) .................................. *passim*

*Robert Bosch LLC v. Pylon Mfg. Corp.*,
659 F.3d 1142 (Fed. Cir. 2011)......................................................................................11

*Trebro Mfg., Inc. v. Firefly Equip., LLC*,
748 F.3d 1159 (Fed. Cir. 2014)......................................................................................10

*Univ. of Texas v. Camenisch*,
451 U.S. 390 (1981)........................................................................................................7

*Wedgeworth v. Fibreboard Corp.*,
706 F.2d 541 (5th Cir. 1983) .........................................................................................11

**Other Authorities**

Fed. R. Civ. P. 6(b), 16(b)–(c) ........................................................................................6

Fed. R. Civ. P. 15(a)(2).....................................................................................................9

Local Rule 1-2...................................................................................................................6

Local Rule CV-7(e)....................................................................................................6, 7, 8

Local Rule CV-65 .............................................................................................................6

## I.    INTRODUCTION

Rare Breed is losing the market it pioneered.  Its Consolidated Motion for Preliminary Injunction ("P.I. Motion") asks the Court to halt continued sales of accused products that undercut Rare Breed's prices and take its market share—sale by sale, week after week.  (*See In re Rare Breed Triggers Pat. Litig.*, No. 4:26-md-03176-ALM, Dkt. No. 7 (E.D. Tex. May 29, 2026) ("P.I. Mot.").)  The Moving Defendants[1] do not answer that motion.  Instead, they ask the Court to delay their response to the P.I. Motion and order the parties to (1) undertake another round of conferrals, and (2) submit competing scheduling proposals, which will be resolved at some later, unscheduled point.  (*See ABC IP, LLC, et al., v. 80Mills LLC, et al.*, No. 4:26-cv-00380-ALM, Dkt. No. 51 (E.D. Tex. June 9, 2026) ("Mot.").)[2]  However it is labeled, that is a request to suspend the response deadlines on Rare Breed's request for an injunction.  A preliminary-injunction motion set to no timetable is a denial in all but name, and each week of delay means lost sales, eroded pricing, and customers Rare Breed may never recover.

Defendants' Motion for Scheduling Order(s) ("Motion") supplies no good cause for that result.  The volume of Rare Breed's filings does not warrant additional time to respond: each Defendant needs only to address the patents, claims, and accused products applicable to it, and

---

[1] "Moving Defendants" refers here to 80Mills LLC, Pearson Gardner, Hanes Tactical LLC, Damion Bennett, DNT LLC, Zach Morrow, Harrison Gunworks LLC, Tyler Harrison, Steven Nguyen, and Z3 Productions, LLC.

[2] The Moving Defendants filed near-identical Certain Defendants' Motion for Scheduling Orders.  *See ABC IP, LLC, et al., v. 80Mills LLC, et al.*, No. 4:26-cv-00380, Dkt. No. 51 (E.D. Tex. June 9, 2026); *ABC IP, LLC, et al., v. Hanes Tactical LLC, et al.*, No. 26-cv-00369, Dkt. No. 52 (E.D. Tex. June 9, 2026); *Rare Breed Triggers, Inc., et al., v. DNT LLC, et al.*, No. 26-cv-00377, Dkt. No. 53 (E.D. Tex. June 9, 2026); *ABC IP, LLC, et al., v. Harrison Gunworks LLC, et al.*, No. 26-cv-00379, Dkt. No. 45 (E.D. Tex. June 9, 2026); *ABC IP, LLC, et al., v. Nguyen*, No. 26-cv-00425, Dkt. No. 38 (E.D. Tex. June 9, 2026); *ABC IP, LLC, et al., v. Z3 Prods, LLC*, No. 26-cv-00367, Dkt. No. 56 (E.D. Tex. June 9, 2026).  The motion filed by the defendants in the 80Mills LLC case is representative of the motions filed by all defendants.  Thus, for convenience, this brief includes citations only to the motion filed by the defendants in the 80Mills LLC case.

1

Plaintiffs' P.I. Motion and related filings map those issues cleanly onto each Defendant.  The pleading status of the recently issued patents is no obstacle to response either.  Plaintiffs' pending motions to amend their complaints are routine and merely add allegations regarding recently issued intellectual property or newly released accused products.  Defendants articulate no valid reason— either in the present motion or in their oppositions to Plaintiffs' motions to amend—why these routine leave motions should be denied at this early stage in the case.  The Court may decide Plaintiffs' leave motions and then address the P.I. Motion.  And even if the Court takes no action on the leave motions, Defendants have an independent obligation to respond to the P.I. Motion on the present pleadings, which include allegations related to patents implicated by the P.I. Motion. The proper response to Plaintiffs' P.I. Motion is a bounded extension, not an open-ended pause. Indeed, Plaintiffs have already accommodated other Defendants' reasonable extension requests; the Moving Defendants made no such request.  Lastly, the Moving Defendants' request for continued conferral is futile and underscores their delay tactics.  The parties have already conferred several times—both prior to the filing of Plaintiffs' P.I. Motion and after—and Defendants' request for a scheduling order emerged opposed, as it remains.  Further conferral only works to delay a decision on the P.I. Motion, which clearly benefits, and is the result desired by, the Moving Defendants.

The Court should deny the Motion, require a prompt response to the P.I. Motion by Defendants, and bring the P.I. Motion to decision rather than freezing it.

## II.    FACTUAL BACKGROUND

### A.    Rare Breed Created the Market, Fought for Years to Sell Its Products, and Emerged Under a DOJ Settlement That Requires It to Enforce Its Patents

Plaintiff ABC IP, LLC ("ABC") owns a portfolio of patents covering what it has coined "forced reset" trigger technology—trigger components that allow a semi-automatic rifle to fire

faster follow-up shots while still requiring a separate trigger pull for each shot.  (P.I. Mot. at 4.)[3]

ABC has exclusively licensed those patents to Plaintiff Rare Breed Triggers, Inc. ("RBT"), which

designs, manufactures, and sells the forced reset trigger products that practice them.  (P.I. Mot. at

4.)  (ABC and RBT are referred to together as "Rare Breed.")  Rare Breed brought the first

commercially available forced reset trigger, the FRT-15®, to market at the end of 2020.  (*In re*

*Rare Breed Triggers Pat. Litig.*, No. 4:26-md-03176-ALM, D.I. 7-02 at ¶ 7 (E.D. Tex. May 29,

2026) ("DeMonico Decl.").)  The FRT®[4] line of forced reset trigger products is Rare Breed's entire

business; it sells no other firearms or accessories, and it has marketed its FRT line as a premium,

no-discount product.  (*Id.* at ¶¶ 24, 60.)

That business was nearly destroyed before it began.  About nine months after the FRT-15®

launched, the ATF asserted that the product was a machine gun.  (*Id.* at ¶ 11.)  Rare Breed disputed

that classification and filed declaratory-judgment actions; the Department of Justice responded

with a civil enforcement action and, in 2023, obtained both a temporary restraining order and a

preliminary injunction that shut down Rare Breed's operations and barred Rare Breed from

enforcing its patents.  (*Id.* at ¶¶ 11–13; P.I. Mot. at 20.)

The landscape then shifted.  After the Supreme Court held in *Cargill v. Garland*, 602 U.S.

406 (2024), that the government had exceeded its authority in regulating bump stocks, the Northern

District of Texas declared Rare Breed's products to be lawful semi-automatic triggers in July 2024.

---

[3] In a forced reset trigger mechanism, cycling of the bolt carrier or bolt causes the trigger member to be mechanically moved to the reset position, where it is held until the bolt or bolt carrier is back in battery (when it is safe for the user to pull the trigger again) without the need for a disconnector, so that the user may pull the trigger and discharge the firearm again without having to first reduce pressure from the trigger.

[4] Plaintiff Rare Breed Triggers, Inc., is the exclusive licensee of various registered and applied-for trademarks, covering its line of forced reset trigger products, including FRT® (Reg. No. 8187914), FRT-15® (Reg. No. 7004418), and FRT-MR3™ (App. No. 99714625).

3

(DeMonico Decl. at ¶ 14.)  Infringers sprung up and flourished, claiming the benefit of the Northern District of Texas' ruling while Rare Breed remained enjoined.  (*Id*. at ¶ 58.)  In May 2025, Rare Breed and the DOJ settled.  (*Id.*)  Under the settlement, Rare Breed's products may be sold lawfully, subject to conditions—including that Rare Breed will not develop forced reset triggers for handguns, will promote the safe and responsible use of its products, and will enforce its patents against infringing products.  (*Id.* at ¶ 15.)  The settlement thus did two things at once: it lifted the bar that had prevented Rare Breed from enforcing its patents, and it obligated Rare Breed to do so.

Rare Breed has enforced its patents whenever permitted.  Before the DOJ injunction, Rare Breed obtained a preliminary injunction and then a consent judgment and permanent injunction against an earlier infringer.  (P.I. Mot. at 20–21.)  In March and April 2025, Rare Breed sent cease-and-desist letters to several infringers.  (DeMonico Decl. at ¶ 34.)  By the time of the DOJ settlement in May 2025, Rare Breed had already identified roughly 70 companies selling infringing forced reset trigger products, and that number has continued to grow on a near-daily or weekly basis.  (*Id*. at ¶ 58.)  After the DOJ settlement lifted the enforcement bar, Rare Breed began filing lawsuits within weeks, and has since filed roughly 80 infringement actions.  (*Id*. at ¶ 17.)

The accused products at issue in the P.I. Motion are three cam-based devices that compete directly with Rare Breed's line of products—the Super Safety, the ARC-Fire, and the Atrius Selector—sold by the 13 Defendant groups at a fraction of Rare Breed's prices.  (P.I. Mot. at 1–2.)  While Rare Breed prices its products from roughly $450 to $615, Defendants sell the accused products for as little as $20.  (*Id*. at 31.)

### B.    This MDL and the Consolidated Preliminary-Injunction Motion

As Rare Breed's enforcement actions multiplied across the country, the Judicial Panel on Multidistrict Litigation ("JPML") centralized them in this District, creating this multi-district

litigation ("MDL") on April 2, 2026.  (P.I. Mot. at 22.)  The Panel did so specifically to eliminate duplicative discovery and to prevent inconsistent pretrial rulings—especially regarding claim construction, patent validity, and the appropriateness of injunctive relief, observing that too narrow a centralization "may lead to inconsistent injunction decisions" across courts.  (*Id.* (quoting *In re: Rare Breed Triggers Pat. Litig.*, MDL No. 3176, Dkt. No. 44 at 2, 4 (J.P.M.L. Apr. 2, 2026)).)

On May 29, 2026, Rare Breed filed its Consolidated Motion for Preliminary Injunction against the 13 Defendant groups, seeking to enjoin continued sales of the accused products.  (P.I. Mot.)  The patents asserted against these Defendants include U.S. Patent Nos. 12,038,247 ("the '247 Patent"), 12,578,159 ("the '159 Patent"), 12,529,538 ("the '538 Patent"), 12,031,784 ("the '784 Patent"), and 12,636,403 ("the '403 Patent");[5] the motion seeks preliminary relief on that basis.  (*Id.* at 2 n.2.)

### C.    The Parties' Coordination and the Moving Defendants' June 2 Conference

Plaintiffs sought to coordinate with Defendants before filing their P.I. Motion.  Plaintiffs proposed conferring with Defendants on a coordinated schedule; they previewed in writing the motions they intended to file, including the implicated patents and accused products, the page limits they would request, and the expedited discovery they would seek; and they stated they would not oppose an equal number of sur-reply pages. (Ex. 1 at 1.)  Plaintiffs continued to confer with Defendants after filing the P.I. Motion—Plaintiffs agreed that Defendants' outside counsel and retained experts could access the sealed preliminary-injunction materials, filed redacted public versions of the motion and supporting declarations ahead of the deadline, proposed an expedited briefing-and-discovery schedule and a prompt status conference, offered to bear Defendants'

---

[5] Plaintiffs have sought to amend the Complaints for all 13 defendant groups against whom the preliminary injunction is sought.  Seven of the 13 seek to add only the newly issued '403 Patent; three seek to add the '159, '538, and '403 Patents; one seeks to add the '784 and '403 Patents; and two seek to add all four.

reasonable costs of addressing the recently issued patents if leave to amend were denied, and accommodated certain defendants' requests for a two-week extension of the response deadline. (Ex. 2 at 1–3, 10–12, 19–20.)  The Moving Defendants here did not request an extension of the deadline to respond to the P.I. Motion.  Counsel for the Moving Defendants conferred again with Plaintiffs' counsel on June 2, 2026, regarding a path forward for the preliminary-injunction proceedings.  (Mot. at 10.)  The Moving Defendants' certificate confirms the result: Plaintiffs oppose the relief the motion seeks.  (*Id.*)

## III.   ARGUMENT

### A.   The Court's Docket-Management Authority and the Patent Rules Support Deciding the P.I. Motion Promptly, Not Pausing It

Plaintiffs do not dispute the Court's authority to manage its docket and to modify deadlines under FRCP 16, FRCP 6(b), Local Rule CV-7(e), and Patent Rule 1-2.  *See* Fed. R. Civ. P. 6(b), 16(b)–(c); L.R. CV-7(e); L. Pat. R. 1-2.  But those provisions confer discretion—they do not compel the result the Moving Defendants seek.  Indeed, the authorities the Moving Defendants invoke suggest the standard motion response deadline should apply to the Moving Defendants' response to the P.I. Motion.

The Court's rules confirm that the ordinary briefing schedule governs the P.I. Motion.  (*See* Mot. at 5–6 (citing the Fed. R. Civ. P. 6, 16; L.R. CV-7(e); L. Pat. R. 1-2).)  Local Patent Rule 1-2, which is invoked by the Moving Defendants, confirms that "[t]he Civil Local Rules of this Court shall . . . apply to these actions . . . ." L. Pat. R. 1-2.  Turning to the Court's Local Rules, they plainly contemplate preliminary-injunction practice: Rule CV-65 addresses injunctions directly, requiring that "[a]n application for a temporary restraining order or for a preliminary injunction shall be made on an instrument separate from the complaint." L.R. CV-65.  Yet, despite having expressly singled out preliminary injunction motions, the Rules prescribe no separate or enlarged

6

response period for them.   Preliminary-injunction motions are therefore subject to the same response period as other motions under Local Rule CV-7(e)—14 days—subject only to the Court's discretion to lengthen or shorten that period on a proper showing. *See* L.R. CV-7(e).  The Moving Defendants thus bear the burden of justifying a departure from the standard 14-day response window.

Moreover, the "extraordinary" and time-sensitive nature of a preliminary injunction requires acting quickly with the information available.  (Mot. at 6 (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008)).)  The Moving Defendants rely on *Natera v. Neogenomics Laboratories* and *Amazon v. Barnesandnoble.com* for the proposition that preliminary injunctive relief demands a claim-by-claim showing of likely infringement and validity.  (*See* Mot. at 6 (citing *Natera, Inc. v. NeoGenomics Lab'ys, Inc.*, 106 F.4th 1369, 1375 (Fed. Cir. 2024); *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1350–51 (Fed. Cir. 2001)).)  But that is merely a description of **Plaintiffs'** burden—a burden Plaintiffs have met on the present record.  Neither *Natera* nor *Amazon* provides a basis for suspending the Defendants' response deadline.  If anything, the extraordinary nature of the remedy and the ongoing, accruing harm it addresses counsel prompt resolution, not delay.  *See Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981) (explaining that "haste . . . is often necessary" in preliminary injunction proceedings, where the purpose of such relief is to "preserve the relative positions of the parties until a trial on the merits," and where a decision is customarily made "on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits.").

**B.      Defendants Show No Good Cause for Suspending Their Response Deadline, Which Is the Practical Effect of Their Motion**

The Moving Defendants offer no valid reason for altering their deadline to respond to the P.I. Motion.  Good cause is required to alter that deadline, (*see* Mot. at 5 (citing Fed. R. Civ. P.

7

6(b)(1)(A))), and the Moving Defendants have failed to show good cause because (1) the volume and breadth of the P.I. Motion are no obstacle to a timely response, (2) Defendants are required to respond to the P.I. Motion regardless of Plaintiffs' pending motions for leave to amend their complaints, and (3) Moving Defendants' proposal for defendant-specific briefing directly contradicts the JPML's purpose in initiating this MDL.  At root, Moving Defendants identify no concrete prejudice that would arise from being required to respond to the P.I. Motion.

### 1.    The Size of the Consolidated P.I. Motion Does Not Support the Moving Defendants' Requested Relief

The Moving Defendants are capable of responding to the P.I. Motion in the allotted time. The Moving Defendants' central theme is page count: they tally the brief, the expert declarations, the claim charts, and the exhibits, and argue the default response period is too short to digest the P.I. Motion.  (Mot. at 4, 6–7.)  But they cite no authority for their proposition that the volume of the P.I. Motion makes responding in the allotted 14-day window (or some other reasonable extension) "unworkable"; it is not.  (Mot. at 6.)  As another benchmark, the 28-day response period available here—the 14 days afforded by Local Rule CV-7(e) plus the 14-day extension Plaintiffs agreed to for defendants that requested it—exceeds the time often allotted for responding to opening expert reports, which have no page limit.  *See, e.g.*, *Wapp Tech Ltd. et al. v. Apple Inc. et al.*, No. 4:25-cv-00230, Dkt. No. 175 at 2 (E.D. Tex. May 13, 2026) (allotting 21 days between exchange of opening and rebuttal expert reports).  Moreover, the Moving Defendants' argument mistakes the size of the consolidated record for the size of each Defendant's task.  The claim charts and exhibits are not an undifferentiated mass—each Moving Defendant need address only the patents, the asserted claims, and the accused product applicable to it.  The P.I. Motion and supporting papers provide the necessary mapping of patents and products to each defendant.  (*See*

*generally* P.I Mot.)  The defendant-specific roadmap the Moving Defendants suggest they lack is already in the record.

Nor is volume a reason to suspend the deadlines, as opposed to extending them.  The ordinary remedy for a large record is more time to respond—a bounded extension keyed to a date certain.  Plaintiffs do not oppose that and have already granted certain Defendants a two-week extension to respond to the P.I. Motion.  (Ex. 2 at 1–3.)  The Moving Defendants sought no such extension and instead seek relief that is different in kind: not a longer, fixed response period, but no running deadline at all until an open-ended set of preconditions is satisfied.  (*See* Mot. at 8.)  The breadth of the record justifies a reasonable, dated extension; it does not justify taking the motion off any timetable.

### 2.    The Pleading Status of the Recently Issued Patents Is No Basis to Suspend the Deadlines

The Moving Defendants argue that the deadlines should not run because certain asserted intellectual property—including the recently issued '403 Patent—and newly released accused products are being added through pending, opposed motions for leave to amend.  (Mot. at 7.)  The argument does not hold.  The motions for leave are routine: they add recently issued patents that read on the same accused products already in these actions, and they are sought at the outset of the litigation, when leave is freely given.  *See* Fed. R. Civ. P. 15(a)(2).  Similar leave has already been granted in Rare Breed's related actions.  *See ABC IP, LLC v. Hawkphin Sales, LLC*, No. 4:26-cv-00015, D.I. 26 (S.D. Iowa June 3, 2026); *ABC IP, LLC v. Hush Distribution, LLC*, No. 2:26-cv-00054, D.I. 18 (E.D. Tex. June 1, 2026).

Plaintiffs do not dispute that the Court may resolve Plaintiffs' motions for leave to amend their pleadings before it reaches the preliminary injunction.  But the order in which the Court takes up those matters is distinct from the Moving Defendants' obligation to respond to the motion as

9

filed.  The Moving Defendants can prepare their opposition on the present record now: if leave is granted, the patents were always going to be in these actions; and if it is denied, Plaintiffs have already offered to bear the Moving Defendants' reasonable costs of any work directed to those patents.  (Ex. 2 at 12.)  The additional patents in Plaintiffs' pending motions for leave to amend thus cause no prejudice to the Moving Defendants.

      **3.**      **Moving Defendants' Suggestion That Preliminary-Injunction Proceedings Be Broken Into Defendant-Specific Briefing Runs Counter to the MDL's Purpose**

The briefing process the Moving Defendants suggest contradicts the JPML's stated purpose of this MDL.  The Panel centralized these actions precisely to manage that complexity, to avoid duplicative proceedings, and to prevent inconsistent rulings on validity and the appropriateness of injunctive relief.  (*See In re Rare Breed Triggers Pat. Lit.*, MDL No. 3176, Dkt. No. 44 at 2–4 (J.P.M.L. Apr. 2, 2026).)  The Moving Defendants' suggestion that the proceedings be split into defendant-specific or product-specific "tracks" would undo exactly what centralization was designed to accomplish, multiplying the briefing and reintroducing the risk of inconsistent injunction rulings across member actions.  (Mot. at 7.)  The breadth of this case is the reason to keep the consolidated motion unified, not a reason to fragment it.

      **C.**      **The Moving Defendants Effectively Request an Open-Ended Stay That Would Prolong Plaintiffs' Ongoing, Irreparable Harm**

Even if the Moving Defendants had shown some need for relief, good cause must be weighed against the harm that delay would cause.  That harm is occurring now and deepens each week.  Rare Breed and the accused sellers are direct competitors in a small market, and the accused products undercut Rare Breed's prices by a wide margin.  In that setting, every infringing sale is a sale Rare Breed is unlikely to recover, and the resulting loss of market share and customers is irreparable. *See Trebro Mfg., Inc. v. Firefly Equip., LLC*, 748 F.3d 1159, 1170–71 (Fed. Cir. 2014).

Defendants' undercutting also erodes the premium pricing on which Rare Breed built its business and recasts Rare Breed—the pioneer of the technology—as a mere greedy copyist. A damages award cannot undo such reputational harm. *See Douglas Dynamics, LLC v. Buyers Prods. Co.*, 717 F.3d 1336, 1344–46 (Fed. Cir. 2013). And because the accused sellers are largely newly formed entities, a later damages award is likely uncollectible, confirming the inadequacy of a remedy at law. *See Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1155–56 (Fed. Cir. 2011).

Against that backdrop, the relief the Motion seeks is, in substance, an open-ended stay. A request framed as a scheduling process that in fact suspends every deadline pending open-ended conditions is a stay of indefinite duration. *Cf. Wedgeworth v. Fibreboard Corp.*, 706 F.2d 541, 545 (5th Cir. 1983) (reversing a stay as immoderate and of indefinite duration). Here, the Moving Defendants do not ask for a longer, fixed response period—Plaintiffs are amenable to such an agreement. (Ex. 2 at 1–3.) They instead ask that no deadline run at all until the parties complete a further conferral, exchange agreed or competing proposals, and the Court resolves the schedule on the papers or at an as-yet-unscheduled conference. (*See* Mot. at 8.) None of those events is fixed to any date but the Court's own calendar, so the relief sought is a *de facto* indefinite stay.

The *AS Designs* case, which the Moving Defendants rely upon in their Motion, illustrates the indefinite nature of their requested relief. (*See* Mot. at 5.) On April 27, 2026, Plaintiffs moved for a preliminary injunction against AS Designs, LLC. (*See Rare Breed Triggers, Inc., et al. v. AS Designs, LLC, et al.*, No. 4:26-cv-00370, Dkt. No. 28 (E.D. Tex. Apr. 27, 2026).) Shortly thereafter, AS Designs filed a motion for scheduling order seeking to vacate the default briefing deadlines and push the opposition out roughly eleven weeks. (*Id*., Dkt. No. 33 (May 6, 2026).) AS Designs' motion for a scheduling order is opposed and remains pending. Further, AS Designs

11

has not responded to Plaintiffs' preliminary-injunction motion, which was filed more than six weeks ago.  The *AS Designs* case therefore supplies no finding of good cause that supports the relief sought here.  AS Designs' motion for a scheduling order is instead instructive for the result it produced—an effective open-ended stay of preliminary-injunction proceedings.  The present motion invites the same result.

Rare Breed continues to be harmed by the ongoing erosion of its market—the market it built—and the exclusivity that patents are supposed to protect.  The Moving Defendants identify no hardship they will endure in preparing a response on the present record—only a preference not to do so on the current schedule.  Plaintiffs do not oppose a bounded extension to Defendants' time to respond to the P.I. Motion; they do oppose the indefinite stay the Motion would cause.  Because the Moving Defendants' response preferences do not outweigh the concrete harms accruing to Rare Breed, the Motion should be denied.

## IV.    CONCLUSION

For these reasons, Plaintiffs respectfully request that the Court deny the Moving Defendants' motion.

12

DATED: June 23, 2026

Respectfully submitted,

/s/ Matthew A. Colvin

Matthew A. Colvin
Texas Bar No. 24087331
Carl E. Bruce
Texas Bar No. 24036278
**FISH & RICHARDSON P.C.**
1717 Main Street, Suite 5000
Dallas, TX 75201
E-mail: colvin@fr.com
        bruce@fr.com
Tel: (214) 747-5070
Fax: (214) 747-2091

Benjamin J. Christoff
DC Bar No. 1025635
**FISH & RICHARDSON P.C.**
1000 Maine Avenue SW, Suite 1000
Washington, DC 20024
E-mail: christoff@fr.com
Tel: (202) 783-5070
Fax: (202) 783-2331

Glenn D. Bellamy *(admitted pro hac vice)*
**WOOD HERRON & EVANS LLP**
600 Vine Street, Suite 2800
Cincinnati OH 45202
E-mail: gbellamy@whe-law.com
Tel: (513) 707-0243
Fax: (513) 241-6234

Melissa R. Smith
Texas State Bar No. 24001351
**GILLAM & SMITH, LLP**
303 South Washington Avenue
Marshall, Texas 75670
Tel: (903) 934-8450
Fax: (903) 934-9257
E-mail: melissa@gillamsmithlaw.com

*Attorneys for Plaintiffs*
*ABC IP, LLC and Rare Breed Triggers, Inc.*

13

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on June 23, 2026, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system.

/s/ Matthew A. Colvin
Matthew A. Colvin

14